UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON STEVENS, | No. C-09-0622 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| THOMAS KELLER RESTAURANT GROUP, *et al.*, | |
| Defendants. | **(Docket No. 24)** |
| _____/ | |

In February 2009, Plaintiff Jason Stevens initiated this lawsuit against Defendants Thomas Keller Restaurant Group, Bouchon LP, and Bouchon LLC, asserting claims for fraud, promissory fraud, negligent misrepresentation, breach of contract, and promissory estoppel. *See* Docket No. 1 (complaint). Currently pending before the Court is Mr. Stevens's motion for leave to file a first amended complaint ("FAC"). Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Mr. Stevens's motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

The factual allegations in Mr. Stevens's original complaint and FAC are the same. According to Mr. Stevens, in November 2008, Defendants offered him a job as a general manager at a Bouchon restaurant in Yountville, California, and he accepted. *See* Prop. FAC ¶ 10. Mr. Stevens further alleges that, after he accepted the job, he took steps to effect his relocation to California -- *e.g.*, by signing a rental lease for a house in Napa and by signing a contract and paying a deposit to

have his car shipped to Las Vegas where he was to be trained prior to working at the Yountville restaurant. *See* Prop. FAC ¶¶ 10-11. In December 2008, however, shortly before Mr. Stevens was to leave for Las Vegas, Defendants informed him that they were rescinding the job offer. *See* Prop. FAC ¶ 12.

Mr. Stevens's motion asks for leave to make four amendments to the complaint: (1) to add a new defendant, Yountville Food Emporium; (2) to dismiss Defendants Bouchon LP and Bouchon LLP without prejudice; (3) to rename Defendant Thomas Keller Group as Shamus & Peabody LLC d/b/a Thomas Keller Restaurant Group; and (4) to add a claim against all Defendants for a violation of California Labor Code § 970. Defendants do not oppose the first three proposed amendments but do oppose the fourth.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend his or her complaint once as a matter of course before being served with an answer; otherwise, a plaintiff may amend only with the consent of the defendant or the court's leave. *See* Fed. R. Civ. P. 15(a). In the instant case, Defendants have already filed an answer to Mr. Stevens's original complaint. Accordingly, Mr. Stevens must have leave of the Court to file his proposed FAC.

Rule 15(a) instructs that a"court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007). Of these four factors, Defendants have asserted only the futility of the amendment. Defendants contend that it would be futile to add a claim pursuant to § 970 because, even accepting the allegations in the proposed FAC as true, Mr. Stevens cannot state a claim for relief. *See Townsend v. University of Alaska*, 543 F.3d 478, 486 n.6 (9th Cir. 2008) (stating that "[t]he basis for futility is more accurately characterized as a failure to state a claim for relief [under Rule 12(b)(6)]").

California Labor Code § 970 provides in relevant part as follows:

> No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change . . . from any place outside to any place within the State . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:
>
> (a) The kind, character, or existence of such work;
>
> (b) The length of time such work will last, or the compensation therefor;
>
> (c) The sanitary or housing conditions relating to or surrounding the work;
>
> (d) The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought.

Cal. Lab. Code § 970. Any person who violates § 970 is liable in a civil action "for double damages resulting from such misrepresentations." *Id.* § 972.

According to Defendants, Mr. Stevens cannot state a claim for relief under § 970 because such a claim cannot arise unless the plaintiff actually physically relocates to California -- and here, there is no dispute that Mr. Stevens did not do that. In turn, Mr. Stevens contends that "a plaintiff need not have actually begun, let alone completed, his or her physical change of locations in order to state a viable cause of action." Mot. at 7. Alternatively, Mr. Stevens argues that relocating under § 970 is a process requiring "that a plaintiff must have taken some actions toward changing his or her location." *Id.* at 9. Both parties agree that there is no authority that directly addresses the legal question of what § 970 requires. Thus, the issue for the Court is one of statutory interpretation.

The California Supreme Court applies statutory interpretation as follows:

> Our task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.

United States District Court
For the Northern District of California

*Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1190 (2006); *see also Schmidli v. Pearce*, 178 Cal.App.4th 305, (Cal. App. 3 Dist. 2009) (discussing the same).

The Court begins by examining the language of § 970. The statute provides in relevant part that "[n]o person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change . . . from any place outside to any place within the State." Cal. Lab. Code § 970. Although Mr. Stevens focuses on the words "influence, persuade, or engage," the Court agrees with Defendants that the critical term here is "change." If change means actual change in residence and relocation, prohibiting one from "influencing" another to change does not obviate that requisite element.

As used in § 970, the word "change" is not unambiguous. Both Defendants' position -- *i.e.*, that "change" requires actual physical relocation -- and Mr. Stevens's alternative position -- *i.e.*, that "change" is a process which requires at most taking steps to relocate -- are plausible. *See Snukal v. Flightways Mfg., Inc.*, 23 Cal. 4th 754, 778 (2000) ("'A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable.'").

The Court therefore turns to extrinsic aids in statutory interpretation. Neither party has pointed to any specific legislative history for § 970. There is case law, however, that provides some guidance, especially *Seubert v. McKesson Corporation*, 223 Cal. App. 3d 1514 (1990),[1] and *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002). These cases present two primary purposes for § 970: (1) protection of the employee and (2) protection of the community.

In *Seubert*, the state appellate court first noted that the statute "'was enacted to protect migrant workers from the abuses heaped upon them by unscrupulous employers and potential employers, especially involving false promises made to induce migrant workers to move in the first instance.'" *Id.* at 1522. The court, however, went on to add that the statute had been construed to apply to other employment situations, particularly since "'[n]othing in the statute restricts application of the statutory language to any particular class or kind of employment'" and there is

---

[1] *Seubert* was overruled on unrelated grounds by *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384 (2006).

"'no justification for restricting application of the statutory provisions to farm labor or other mass hiring situations.'" *Id.* The court then described the purpose underlying § 970 as follows:

> The apparent purpose . . . is to protect potential employees from being solicited to change employment by false representations concerning the nature or duration of employment. The statutory scheme is particularly addressed to preventing employers from inducing potential employees to move to a new locale based on misrepresentations of the nature of the employment.

*Id.* This purpose is thus focused on protecting the employee who "move[s] to a new locale." The state appellate court in *Fittante v. Palm Spring Motors*, 105 Cal. App. 4th 708 (2003), likewise stated that "Labor Code section 970 was manifestly enacted for a public purpose, to prevent unscrupulous treatment of employees who are induced to move on the promise of employment." *Id.* at 718 (holding that it is against public policy for employers to exempt themselves from section 970 liability as part of the employment agreement).[2] Again, the focus is protecting employees who have been "induced to move."

That the purpose of § 970 is particularly targeted to employees who have in fact changed residence (and thus incurred the full scope of reliance costs unlike those who only contemplate or begin the process of moving) is consistent with the correlative concern when an employee is actually displaced -- the risk of becoming a charge upon the new community. In *Mercuro*, the state court of appeal observed:

> Labor Code section 970 also has a public purpose: to protect the community from the harm inflicted when a fraudulently induced employment ceases and the former employee is left in the community without roots or resources and becomes a charge on the community.

///
///
///
///

---

[2] In *Fittante*, the Plaintiff had relied on data provided by the employer suggesting that if he moved to Palm Springs he could expect income at least equal to what he was earning in Beverly Hills. Plaintiff then relocated to Palm Springs with his family and discovered the representations to be false. *Fittante*, at 712. The Court held that "[e]mployers should not be permitted to circumvent the statutory policy and insulate themselves from liability for the precise fraudulent, oppressive or unscrupulous conduct against which the statute is designed to protect." *Id.*

*Mercuro*, 96 Cal. App. 4th at 180.[3] The purpose of protecting the affected community from charges of new unemployed arrivals does not occur unless and until relocation is completed. Accordingly, the purpose of § 970 as articulated by the cases discussed above compels this Court to agree with Defendants that a violation of § 970 does require an actual change of address. This conclusion is also consistent with the California Supreme Court's decision in *Collins v. Rocha*, 7 Cal. 3d 232 (1972), in which the defendant argued that the words "to change: only contemplated a permanent change of residence, and not a temporary relocation of 2 weeks." *Id.* at 239. The *Collins* Court found that "[t]he words 'to change from one place to another' import temporary as well as permanent relocation of residence, as contrasted with a mere change in the site of employment. The quantitative fact that the change of residence was to be only for two weeks rather than for a longer period would not appear to affect the qualitative misrepresentations, nor does it render the statute inapplicable." *Id.* at 239-40.

Mr. Stevens counters with various arguments: (1) The plain language of § 970 may be silent, but the language of § 972, allowing "double damages resulting *from such misrepresentations*," Cal. Lab. Code § 972 (emphasis added), seems to protect from harm associated with the misrepresentation instead of the move; (2) requiring actual relocation would undermine the statute's

---

[3] Curiously, when stating the purpose of § 970, the *Mercuro* court relied on *Tyco Industries, Inc. v. Superior Court*, 164 Cal. App. 3d 148 (1985), and, while *Tyco* includes similar language, the court in *Tyco* was not making a statement that this was the purpose underlying § 970. Rather, the court was simply quoting from the plaintiff's opposition to the defendant's motion to dismiss, where the plaintiff was arguing that a public policy was violated when he was allegedly wrongfully discharged. The full *Tyco* quote is as follows:

> The conclusionary allegation of public policy violation in the second amended complaint was explained in Richard's points and authorities in opposition to Tyco's demurrer as follows: "... if plaintiff has pleaded a cause of action for violation of labor code [sic] section 970, then a wrongful discharge predicated on that violation is equally viable. By the enactment of that code section, the legislature has expressed its intent that both the individual and the community must be protected from the harm that is inflicted when a fraudulently induced employment ceases, and the individual is left in a community without roots or resources and becomes a charge on the community.

*Id.* at 159. However, now the *Mercuro* court has affirmatively used this language to state § 970's purpose and this Court feels bound by that decision.

objectives by allowing employers an "easy out" from liability; and (3) this holding would violate the public policy of protecting employees from the fraud and abuse by employers. *See* Mot. at 7-8.

These arguments are not convincing. First, § 972's reference to double damages from "such" misrepresentations refers to misrepresentations which induce an employee to actually move as set forth in § 970. Section 972 provides:

> In addition to such criminal penalty, any person, or agent or officer thereof who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations. Such civil action may be brought by an aggrieved person or his assigns or successors in interest, without first establishing any criminal liability.

Cal. Lab. Code § 972. Thus, the words "such misrepresentations" only to refer to violations of § 970.

Second, while it may be the case that this holding will give an employer an easy out from the double liability for misrepresentations where no relocation was found, it will not allow fraudulent employers to go free; there are other civil remedies available. Employees may recover damages in contract or tort (for misrepresentation). The enhanced remedy of double damage recovery will be reserved for those violations where the employee (and perhaps the community) has sustained maximum injury resulting from a completed move. Thus, there is already a deterrent for misrepresentations by employers; § 970 simply enhances that deterrence under special circumstances. The Court's interpretation is thus consistent with the statute's objective and does not leave employees without protection. While Mr. Stevens's construction of § 970 is plausible and warrants close consideration, this Court feels bound by the California state court decisions which weigh in favor of Defendants' interpretation.

Finally, the Court acknowledges that protecting employees from fraud and abuse by employers is an important policy. In fact, under California case law, "statutes regulating conditions of employment are to be liberally construed with an eye to protecting employees." *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1111 (2007); *see also Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 794 (Cal. 1999) (stating that remedial legislation affecting wages, hours, and conditions for benefit of employees should be liberally construed with an eye to protecting

employees). However, the instant case does not involve actual working conditions per se but rather involves a situation leading to employment. Under this circumstance, the general canon of construction is not sufficient to overcome the weight of interpretive authority discussed above.

For these reasons, this Court finds that the proposed amendment seeking to add a § 970 violation is indeed futile.

### III. CONCLUSION

Mr. Stevens's motion for leave to amend is granted as to the first three amendments only, *i.e.*, to add a new defendant, Yountville Food Emporium; to dismiss Defendants Bouchon LP and Bouchon LLP without prejudice; and to rename Defendant Thomas Keller Group as Shamus & Peabody LLC d/b/a Thomas Keller Restaurant Group. As to the fourth claim seeking to add a violation of California Labor Code § 970 against all Defendants, leave to amend is denied. Mr. Stevens shall have one week from the date of this order to file his FAC.

This order disposes of Docket No. 24.

IT IS SO ORDERED.

Dated: November 17, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge